260 S.W.2d 491 (1953)
HAYES
v.
KANSAS CITY SOUTHERN RY. CO.
No. 43259.
Supreme Court of Missouri, Division No. 1.
September 14, 1953.
*492 Richard S. Righter, Winston H. Woodson, James F. Walsh, Kansas City, for appellant Kansas City Southern Ry. Co.
Eugene A. Rerat, Minneapolis, Minn., Roberts P. Elam, St. Louis, for respondent.
COIL, Commissioner.
This is an appeal from a judgment entered on a verdict for $141,000 reduced by remittitur to a final judgment for $70,000 recovered by plaintiff-respondent as damages resulting from defendant-appellant's alleged violation of the Federal Safety Appliance Act, 45 U.S.C.A. § 11, requiring efficient hand brakes on railroad cars. We shall refer to the parties as plaintiff and defendant. Although plaintiff had charged defendant with specific negligence, the case was submitted solely on the charge of violation of the Safety Appliance Act.
As there is no contention that plaintiff failed to make a submissible case, and as we have decided that the case must be reversed and remanded for prejudicial error in the admission of evidence, a brief factual statement will suffice. Plaintiff, a switchman employed by defendant, was injured at about 4 a. m. on March 6, 1950, *493 by reason of the alleged inefficiency of a hand brake on a flatcar. Plaintiff was a "car rider" in a switching crew. One of his duties was to ride and control, by the use of hand brakes, cars cut from engines and moving from a south lead into classification tracks, the downgrade slope of which was to the north. Between tracks 5 and 6 was a caboose track. Plaintiff rode one or more cars (which had been cut from an engine on the south lead) about 200 feet into track 6 and brought it or them to a stop. He heard cars moving on a track to the west of track 6. He walked west, crossed the caboose track and saw some cars "running away" downhill on track 5. He boarded one of the moving cars, a flatcar, and attempted to bring the cars to a stop by using the flatcar's hand brake. The brake, according to plaintiff, did not operate efficiently; it released violently forward and then violently reversed, throwing plaintiff to the ground between the rails of track 5 where his right leg was run over by the wheels of the tank car next to the flatcar.
Plaintiff took the deposition of J. O. Hess, a "car rider" in the same switching crew, about five months prior to trial. In his deposition, Hess testified that he had spotted three cars on track 5 about 3 a. m. that particular morning; that the flatcar was preceded by two tank cars; that he had set the brakes on the tank cars; that he had tried the brake on the flatcar but hadn't set it because "the brake just didn't feel right * * * it just kind of hung up * * * seemed like it was kind of stuck." He also testified that about 7:30 a. m. (approximately 3½ hours after the accident) he (Hess) returned to the yard from the hospital to which he had accompanied plaintiff, and there saw defendant's employees, including the yardmaster, the mechanical inspector foreman, two car inspectors, and others; that he went with the group to the flatcar where the brake was tested by at least one of the inspectors. Hess said that the inspector set the brake by turning the wheel and:
"Q. Were you able to observe how it operated while he was testing it? A. I saw him set the brakes. That is as much as I know.
"Q. How did it appear to operate to you then? A. It seemed to operate all right, I guess.
"Q. You think now it operated all right ? A. Well, he set the brake up.
"Q. Did he have todid it appear to you that he had to use unusual force, or jerk it, or pull on it, to set it up? A. I don't remember now." (Theretofore, during the course of the deposition, plaintiff's counsel had claimed surprise at Hess' testimony as to another matter and had had him identify a written statement that Hess had previously given to plaintiff or his representative.)
Following the above-quoted testimony, plaintiff's counsel asked Hess: "Well, when you gave this statement to Mr. Hayes, the statement marked `Exhibit 1', did you tell him at that time: `I watched him operate the brake and decided it was still a grabby brake and one I wouldn't like to work on. After considerable jerking they got the brake set, but did not put a car against it to see if it was holding.'
"Q. Did you tell them that at the time you were telling them everything you knew? * * * A. As far as I remember.
"Q. And as far as you remember now that is the truth? A. It is possible, yes.
"Q. You say `possible'is it or not? A. It is the truth as far as I knew then and as far as I know now.
"Q. It is the truth now as far as you know ? A. As far as I know."
At the trial, plaintiff offered and read Hess' deposition, including the portion of his prior statement, over defendant's objection that such use of the prior statement was an attempt by plaintiff to impeach his own witness. The prior statement was later admitted in evidence and read to the jury over defendant's objection that the use of the statement was an attempt to impeach one's own witness and also that the statement was hearsay. The statement was, in part: "I went down that morning about 7:30 a. m. and Fox, Turner, Brownlee, George Stevens, trainmaster, R. M. Blade, Supt., and S. T. Scott, Terminal trainmaster, also two car knockers, and W. R. Rose, car foreman. I think it was the car *494 inspector whose name I don't know tried the brakes. I watched him operate the brake and decided it was still a grabby brake and one I wouldn't like to work on. After considerable jerking they got the brake set but did not put a car against it to see if it was holding."
Defendant contends that the trial court committed reversible error in permitting plaintiff to impeach his own witness and in permitting the statement to be read to the jury. Plaintiff, with commendable frankness, concedes that the trial court did so err but contends that the error was harmless, not requiring reversal and remand.
Under the well-established rules, it was error to permit the plaintiff to impeach his own witness by the use of Hess' prior extrajudicial statement or to permit such statement to be read to the jury. Plaintiff was not surprised or entrapped by the deposition testimony of his witness for the simple reason that plaintiff had knowledge of Hess' deposition testimony at least five months before plaintiff chose to vouch for Hess as his witness and to submit Hess' deposition to the jury. Under such circumstances, plaintiff should not have been permitted to impeach his own witness by the use of the prior inconsistent statement. Crabtree v. Kurn, 351 Mo. 628, 646, 173 S.W.2d 851, 858[9, 10], 859[11]; Woelfle v. Connecticut Mut. Life Ins. Co., 234, Mo. App. 135, 147-149, 112 S.W.2d 865, 872. Furthermore, the statement was hearsay and could not properly have been used as substantive proof of the asserted facts therein. Woelfle v. Connecticut Mut. Life Ins. Co., supra, 112 S.W.2d 873, 874; Tennison v. St. Louis-San Francisco Ry. Co., Mo.Sup., 228 S.W.2d 718, 720, 721.
The parties agree, therefore, that the only issue here is a narrow one, viz., whether defendant was prejudiced by the action of the trial court in permitting the statement to be read in evidence. They also agree that the sole jury issue below was the efficiency or inefficiency of the brake at the time plaintiff used it. Plaintiff points out that the jury was clearly instructed that the test was the brake's efficiency at the time of its use "and not its efficiency prior or subsequent thereto" and contends that the only respects in which Hess' prior statement differed from his deposition testimony were "utterly irrelevant and immaterial to the issue of whether plaintiff's injury was caused by an inefficient hand brake. It neither tended to prove nor disprove that the brake operated inefficiently at the time plaintiff attempted to use it, and that his injury was caused by such inefficient operation." Plaintiff further contends that certain cross-examination of Hess in the deposition (which cross-examination was read at the trial) demonstrated that Hess' conclusion, in his prior statement as to the condition of the brake, "was pure speculation and guesswork, and was without probative value."
From all of this and from the fact that at the trial the sole issue of liability was amply supported by competent evidence, plaintiff argues that no prejudice could have resulted to defendant by reason of Hess' prior statement. Plaintiff relies upon a number of cases which support the general rule that the admission in evidence of facts which are entirely immaterial to the issues or are without probative force is not reversible error, particularly where the facts are not of a character having a tendency to inflame or arouse hostile passions, and their prejudicial effect is not otherwise made to appear, such as Kunz v. Munzlinger, Mo.Sup., 242 S.W.2d 536, 538, 539 [5]. Plaintiff also cites LeGrand v. Drive-It Co., Mo.Sup., 247 S.W.2d 706, 714 [18], wherein it was held that the reception of evidence pertaining to a wholly trivial and collateral matter involving an incident having nothing to do with the merits of the controversy was held not reversible error.
The fallacy of plaintiff's argument, and the consequent inapplicability of the cases cited, is his erroneous conclusion that Hess' statement (as to the condition of the brake at 7:30 on the morning of the accident) was "utterly irrelevant and immaterial to the issue of whether plaintiff's injury was caused by an inefficient hand brake." It is true that plaintiff's own testimony was sufficient to make a jury question as to defendant's violation of the Safety Appliance Act. It does not follow, however, *495 that Hess' statement as to the brake's condition 3½ hours later ("it was still a grabby brake and one I wouldn't like to work on. After considerable jerking they got the brake set * * *") under circumstances from which the jury could properly infer that the brake was then in the same condition as it was when plaintiff attempted to use it, was not substantial, corroborative testimony of the brake's inefficiency at the time plaintiff attempted to operate it, or not substantially corroborative of the probability of the truth of plaintiff's own testimony. "Where there is a permissible inference of prior existence of a subsequent condition, evidence of the condition of a place, property, or appliance within a reasonable time after an accident in which it was involved is admissible to show the character or condition of such place, property, or appliance at the time of the accident, or to show the cause of such injury, or, it has been held, to show constructive notice of a defective condition, provided the condition or circumstances have not materially changed in the interim." 65 C.J.S., Negligence, § 231, p. 1046. It would seem that plaintiff's only purpose in reading Hess' statement to the jury was to cause the jury to believe that Hess had, prior to giving and contrary to his testimony in his deposition, stated that the brake was not working properly when it was inspected some 3½ hours after the accident, and thereby cause the jury both to find the fact of the brake's inefficiency when plaintiff used it and to believe plaintiff's testimony as to the cause of his injury. It is apparent that the statement was material and relevant to the sole liability issue, viz., whether plaintiff's injury was caused by an inefficient hand brake.
Plaintiff does not contend that the statement was merely cumulative to competent evidence and was, therefore, nonprejudicial. The statement was not cumulative in a strict sense. See State v. Harris, 334 Mo. 38, 43, 64 S.W.2d 256, 258[3]; 32 C.J.S., Evidence, § 1016, p. 1039; cf., Neely v. Kansas City Public Service Co., Mo.App., 252 S.W.2d 88, 93[5, 6]. It was the only corroborative evidence tending to establish the brake's inefficiency at a particular time and under particular circumstances; that is, during defendant's inspection 3½ hours after the accident. It is true that the testimony of two of plaintiff's other witnesses tended to show that the brake was inefficient when it was used about 6 hours after the accident. While the testimony of these other two witnesses was as to the brake's inefficiency subsequent to the accident, and was thus the same general type of corroborative evidence as Hess' prior statement, nevertheless, such testimony concerned the brake's inefficiency at a different time and under different circumstances than those involved in Hess' prior statement.
It is true that plaintiff did not need Hess' statement as to the brake's condition 3½ hours later in order to submit to the jury the question of the brake's inefficiency when plaintiff used it. We cannot determine, however, what effect Hess' statement may have had in the jury's determination of the one controlling issue. Defendant's sole testimony as to the brake's efficiency, adduced through its mechanical inspector foreman and its car inspector, was as to the very same time and circumstances referred to by Hess. That is to say, defendant's evidence on the sole issue, the brake's efficiency or inefficiency when plaintiff used it, was that it was efficient when it was tested at 7:30 a. m., at which time, in Hess' opinion, the brake was still a "grabby brake" and one that he "wouldn't like to work on." Hess' statement was in the nature of an argumentative conclusion, the effect of which may well have been highly prejudicial to defendant. Tennison v. St. Louis-San Francisco Ry. Co., supra, 228 S.W.2d 721 [5-7]. We may not say under the facts here that it is unlikely that the statement was prejudicial.
Nor did defendant's deposition cross-examination of Hess necessarily destroy the probative value of his prior statement or minimize or remove its prejudicial effect. It is true that the cross-examination resulted in the final answer that, as far as Hess could see, the brake "worked all right" 3½ hours later and that the cross-examination may have case doubt upon whether Hess had any actual knowledge of the brake's condition at the time of the inspection, *496 and, thus, had any basis for his conclusion that it was "still a grabby brake." But it was for the jury to determine from all of Hess' testimony whether his deposition testimony was true, whether his prior statement was true, and whether his opinion or conclusion was worthless.
Accordingly, we hold that permitting Hess' prior extrajudicial statement to be read to the jury was prejudicial error under the facts in this case. The judgment is therefore reversed and the case remanded.
VAN OSDOL and LOZIER, CC., concur.
PER CURIAM.
The foregoing opinion by COIL, C., is adopted as the opinion of the court.
All concur.